UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PATRICIA RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-cv-0962-DFH-TAB |
| | ) | |
| WESTSIDE LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON MOTION TO DISMISS

Plaintiff Patricia Rodriguez was an employee of defendant Westside Limited
Partnership.  Rodriguez alleges that Westside ordered her to remove documents
from employee files to interfere with an investigation into Westside being
conducted by the Indiana State Department of Health.  After  Rodriguez refused
to remove these documents, she alleges, her supervisors began treating her poorly
and a few months later terminated her employment.  Rodriguez initially brought
complaints for wrongful discharge in violation of Indiana common law and racial
discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e *et seq.*  The parties agreed to dismiss the race discrimination claim with
prejudice and her Indiana common law claim without prejudice.  Rodriguez then
filed a new complaint for wrongful discharge under Indiana common law in
Indiana state court.  Westside removed to federal court based on diversity

jurisdiction.  Both of Westside's partners are citizens of Tennessee, and plaintiff Rodriguez is a citizen of Indiana.

Westside has  moved to dismiss the common law claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  As explained below, the court concludes that Rodriguez has stated a viable legal claim for relief under the public policy exception to Indiana's at-will employment doctrine.  She has alleged that she was ordered to take illegal action for which she would have risked personal criminal liability, under both the general obstruction of justice statute, Ind. Code § 35-44-3-4, and a criminal provision specific to interfering with State Department of Health investigations, Ind. Code § 16-28-9-3.  Under the reasoning of *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind. 1988), Rodriguez has a claim for wrongful discharge, if she can prove both the wrongful act and the cause of her termination.

### *Applicable Standards*

In evaluating a Rule 12(b)(6) motion to dismiss, the court must assume as true all well-pleaded facts set forth in the amended complaint and construe the allegations liberally, drawing all inferences favorable to the plaintiff.  See *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005).  A plaintiff must "raise a right to relief above the speculative level" by pleading "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, —,

127 S. Ct. 1955, 1965, 1974 (2007).   Dismissal is warranted if the factual allegations, seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.   *Id.* at —, 127 S. Ct. at 1968-69.   Under these standards, factual assertions in this entry should be understood not as findings but only as plaintiff's allegations in the amended complaint.

*Discussion*

Rodriguez alleges in her amended complaint that she worked for defendant's assisted living center and was in charge of payroll and personnel files.   In October 2006, the Indiana State Health Department ("ISDH") was investigating Westside and requested six employees' personnel files.   Rodriguez looked at the files and found documents in two files with unfavorable information about nurses' possibly stealing patients' medications.   Rodriguez told the unit administrator, Lachelle Weaver, about the documents.   Weaver ordered her to remove those documents from the files before giving the files to the investigators.   Rodriguez refused, and Weaver took the files from her, removed those documents, and said she did not want the investigators to receive that information.   Rodriguez raised the issue with other managers.   According to Rodriguez, from that point on, her supervisors subjected her to a hostile work environment and eventually fired her about four months later, on February 27, 2007.   For present purposes, the court assumes that Rodriguez will be able to prove that she was fired because she disobeyed the order to remove the files and/or raised the issue with other managers.

Rodriguez claims that Westside's termination of her employment in retaliation for her refusal to interfere with the ISDH investigation falls under the public policy exception to Indiana's employment at-will doctrine. In general, Indiana considers employment without a definite term to be at-will employment, which "is presumptively terminable at any time, with or without cause, by either party." *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). In *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind. 1988), the court recognized a public policy exception to Indiana's at-will employment doctrine when an employer terminates an employee for the employee's refusal to commit an illegal act for which the employee would be personally liable (in *McClanahan*, driving an overweight load on a truck). In this diversity jurisdiction case, this court's role is to predict how Indiana's highest court would apply Indiana law to the legal issues. *E.g.*, *Woidtke v. St. Clair County*, 335 F.3d 558, 561-62 (7th Cir. 2003); *Product Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 929 (S.D. Ind. 2003).

I.      *The Health Investigation Interference Statute*

Indiana's health investigation interference statute provides for criminal penalties for a person who interferes with an ISDH investigation. The statute provides in relevant part:

> (a)     A person who intentionally:
>
> > (1)     prevents, interferes with, or attempts to impede the work of an employee of the state department [of health] in the investigation and enforcement of any provision of this article;

(2)     prevents or attempts to prevent an employee of the state department from examining any relevant records in the conduct of official duties under this article;

(3)     prevents or interferes with an employee of the state department in preserving evidence of the breach of any provision of this article;

(4)     retaliates or discriminates against a resident or an employee for:
　　　(A)     contacting or providing information to any state official; or
　　　(B)     initiating, participating in, or testifying in an action under this article; or

(5)     fails to correct or interferes with the correction process within the correction period specified on the citation or approved plan of correction, unless an extension is granted by the director and the corrections are made before expiration of the extension;

commits a Class C misdemeanor.

Ind. Code § 16-28-9-3(a).  A person who violates the statute may also be subject to a civil penalty of up to $25,000.  Indiana Code § 16-28-3-1 grants the director of the State Department of Health the authority to "initiate a proceeding . . . to revoke a license issued under this article . . . [due to any] [c]onduct or practice found by the director to be detrimental to the welfare of the patients at the health facility."

The facts Rodriguez has alleged fall within the scope of the health investigation interference statute.  Westside's Weaver ordered Rodriguez to remove documents containing unfavorable information concerning the possibility of Westside nurses stealing patients' medication.  Weaver allegedly gave this order to prevent ISDH from seeing these documents during its investigation of Westside.

This ISDH investigation could have resulted in the revocation of the Westside's license under Indiana Code § 16-28-3-1.  If Rodriguez had removed these files, she could have been personally liable under the investigation interference statute for interfering with or impeding the ISDH investigation into Westside.   Instead, Rodriguez refused and was later terminated from her employment, allegedly because of her refusal to interfere with the ISDH investigation.   As a result, Rodriguez's actions clearly fit within the *McClanahan* public policy exception to Indiana's at-will employment doctrine, allowing her to maintain the wrongful discharge claim.

To avoid this result, Westside offers two arguments.  Neither is convincing.  First, Westside argues that the investigation interference statute does not apply because it applies only to hospitals, while Westside is an assisted living unit.  Dkt. 11, Am. Compl. ¶ 6.   Indiana Code § 16-28-3-1, however, authorizes the department director to revoke a license issued under Article 16-28.  That power applies to a license for any "health facility," a defined term that explicitly excludes "hospitals or mental hospitals" and includes a "place for the reception, accommodation, board, care, or treatment extending beyond a continuous twenty-four (24) hour period in a week of more than four (4) individuals who need or desire such services because of physical or mental illness, infirmity, or impairment." Ind. Code § 16-18-2-167.  As an assisted living unit, the defendant

falls within this statutory definition of a "health facility," making Indiana Code § 16-28-3-1 and the investigation interference statute applicable.[1]

Second, Westside argues that the investigation interference statute does not apply because the ISDH's investigation stems from a patient's complaint. Westside is unable to point to any case law or statute specifically limiting ISDH investigations in such a manner. Indiana Code § 16-28-3-1 states that ISDH's director may revoke a health facility's license because of conduct found "to be detrimental to the welfare of the patients." Patients themselves would be a natural source for ISDH investigations, and nothing in the statute suggests the limitation proposed by Westside. Accordingly, Rodriguez has alleged a viable claim under the public policy exception to the employment at will doctrine.[2]

_____

[1]In its reply brief, Westside argues at page 3 that Rodriguez needed to identify another provision of Indiana Code Title 16, Article 28 exposing her to liability. The argument misses the point. Section 16-28-9-3 creates the threat of personal criminal and civil liability as long as the investigation is one being conducted by the ISDH under any authority granted by Article 28. Article 28 grants the ISDH the power to grant and revoke licenses for health facilities, to promulgate rules for their operation, including patient care, and to investigate alleged violations of those laws and regulations. Nothing more is needed to show that Rodriguez would have been exposed to personal liability for removing documents from files requested by ISDH investigators to prevent the investigators from seeing the documents.

[2]Westside's argument raises an interesting question about the scope of the public policy exception under Indiana law: whether an employee's reasonable and good faith belief that she would be personally liable for breaking the law would be sufficient, even if it might turn out later that a similarly subtle or technical legal defense might be available? It is hard to imagine an employee in Rodriguez's position having to decide on the spot, at risk of her job, whether she might have a good defense if she were prosecuted. The court need not decide that question in this case because the criminal statute clearly applies under the facts Rodriguez
(continued...)

II.    *Obstruction of Justice*

If Rodriguez had complied with Weaver's order to remove documents to hinder an ISDH investigation, she also could have been personally liable for violating Indiana's general obstruction of justice statute.  Sound public policy and a basic respect for the law dictate that Rodriguez's refusal to obstruct justice is within the scope of the *McClanahan* public policy exception to Indiana's at-will employment doctrine.

Indiana's obstruction of justice statute provides:  "A person who . . . alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation . . . commits obstruction of justice, a Class D felony."  Ind. Code § 35-44-3-4.  The facts alleged by Rodriguez fit squarely within this statute.  She alleges that in its investigation into Westside, ISDH requested six employees' files.  Westside ordered Rodriguez to remove damaging documents concerning possible theft of patients' medications from two of these requested files.   Rodriguez would have been personally liable for obstruction of justice for removing these documents to prevent their use in the ISDH investigation.  Westside's subsequent termination of Rodriguez, allegedly for her refusal to obstruct justice, also fits within the *McClanahan* public policy exception to Indiana's at-will employment doctrine.

---

[2](...continued)
has alleged.

To avoid this conclusion, Westside attempts to characterize the obstruction of justice as a mere "general" criminal statute similar to those that courts in other states have declined to use for similar public policy exceptions. The defendant cites *City of Virginia Beach v. Harris*, 523 S.E.2d 239, 246 (Va. 2000), which held on rather unusual facts that obstruction of justice was not a sufficient foundation for the public policy exception concerning wrongful discharge claims because it is a general criminal statute that "does not explicitly state any public policy." The plaintiff in *Harris* was a police officer who charged that his supervisor had obstructed justice when he elected not to pursue prosecution of a case in which Harris thought prosecution was justified. Harris had gone so far as to appear before a judge and obtain a warrant charging his supervisor with obstruction of justice. 523 S.E.2d at 240-41. Of course, police departments routinely make decisions through their chains of command about which cases should be recommended for prosecution.

The Virginia court in *Harris* was obviously troubled by the disruption of the police department's chain of command, and the court rejected the reliance on the obstruction of justice statute because the plaintiff was using it not to protect himself in accord with that statute's policy, but to protect himself from the consequences of his decision to charge his supervisor with a crime. *Id.* at 246. *Harris* does not provide persuasive guidance as to how the Indiana Supreme Court would approach a case like this one, where an employee alleges she was fired for refusing to deny state investigators access to the documents they wanted.

Defendant Westside also cites *Sears, Roebuck & Co. v. Wholey*, 779 A.2d 408, 418 (Md. App. 2001), which held that it was not contrary to public policy to fire one employee (a security supervisor) for investigating a possible theft by a store manager.  The plaintiff in *Wholey* faced no prospect of personal liability, as Indiana law requires.  *Id.* at 419.  Also, because the plaintiff's entire job consisted of investigating theft, the Maryland court was reluctant to say that such investigations were matters of public policy because that would, in effect, give the plaintiff and other employees like him *de facto* tenure.  *Id.* at 420.  *Wholey* also does not provide persuasive guidance for how the Indiana Supreme Court would treat a case like this one.

In recognizing a public policy exception to Indiana's at-will employment doctrine when an employer terminates an employee for refusing to commit an illegal act, the *McClanahan* court acknowledged the inherent danger of placing employees in the precarious position of choosing between violating the law and maintaining their employment:

> Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity.  Employers, knowing the employee's susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum. *The law will not countenance such a situation.*

517 N.E.2d at 393 (emphasis added).  Obstruction of justice is a serious offense, classified as a class D felony.  Adopting Westside's position would allow employers to put employees in the dilemma that *McClanahan* condemned, and to do so for

the purpose of obstructing legitimate official investigations.  This court cannot predict that the Indiana Supreme Court would countenance that result. Obstruction of justice is clearly illegal, and the law must be interpreted to discourage it rather than enable it.

For the foregoing reasons, the defendants' motion to dismiss is denied.

So ordered.

Date:  December 15, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Deer
OGLETREE DEAKINS
thomas.deer@ogletreedeakins.com

John H. Haskin
HASKIN LAUTER  & LARUE
jhaskin@hlllaw.com

Dorothy D. Parson
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
dorothy.koontz@odnss.com

Ryan Patrick Sink
HASKIN LAUTER & LARUE
rsink@hlllaw.com